Marty B. Ready, Esq. (State Bar No. 239135)
David J. Aveni, Esq. (State Bar No. 251197)
**WILSON, ELSER, MOSKOWITZ,
   EDELMAN & DICKER LLP**
401 West A Street, Suite 1900
San Diego, CA 92101-8484
Telephone: (619) 321-6200
Facsimile:  (619) 321-6201
Email: marty.ready@wilsonelser.com
           david.aveni@wilsonelser.com

Attorneys for Plaintiff,
RENOVA ENERGY CORP.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENOVA ENERY CORP., <br><br> Plaintiff, <br><br> v. <br><br> SALVADOR CUEVAS; RENOVA HOME IMPROVEMENTS; RENOVA HOME ENERGY SOLUTIONS, INC.; RENOVA ENERGY EFFICIENCY, INC.; AND RENOVA ENTERPRISES, <br><br> Defendants. | Case No. 1:22-CV-00999-JLT-EPG <br><br> **PLAINTIFF RENOVA ENERGY CORP.'S AMENDED MOTION FOR ENTRY OF DEFAULT JUDGMENT;** <br> **FED. R. CIV. PROC. 55(B)** <br><br> Magistrate Judge: Erica P. Grosjean <br> C-74 <br> Ct Room: 10. 6th Floor <br><br> Action Date: August 10. 2022 <br> Trial: Not set |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................................... 1

II.   STATEMENT OF FACTS ................................................................................................. 1

    A.   Plaintiff's Family of Trademarks and Logos ............................................................ 1

    B.   Defendants' Infringing Conduct and Failure to Litigate ......................................... 3

II.   LEGAL ARGUMENT ....................................................................................................... 4

    A.   Possibility of Prejudice to Plaintiff ........................................................................... 5

    B.   Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint ........... 5

        1.   Likelihood of Confusion ................................................................................ 6

            a.   Strength of the Marks (Factor 1) ......................................................... 7

            b.   Relatedness of the Goods/Services (Factor 2) ................................... 7

            c.   Similarity of the Marks (Factor 3) ...................................................... 8

            d.   Evidence of Actual Confusion (Factor 4) ........................................... 8

            e.   Marketing Channels Used (Factor 5) .................................................. 8

            f.   Degree of Purchaser Care (Factor 6) .................................................. 8

            g.   Defendants' Intent in Selecting the Mark (Factor 7) ......................... 8

            h.   Likelihood of Expansion into Other Markets (Factor 8) ................... 9

    C.   Sum of Money at Stake ............................................................................................. 9

    D.   Possibility of Dispute Concerning Material Facts ................................................ 10

    E.   Whether Default was Due to Excusable Neglect ................................................... 10

    F.   Strong Policy Underlying the Federal Rules of Civil Procedure .......................... 11

    G.   Plaintiff is Entitled to Injunctive Relief Pursuant to 15 U.S.C. §§ 1114 and 1125 ............................................................................................................................. 11

    H.   Plaintiff is Entitled to Costs ..................................................................................... 12

    I.   Plaintiff is Entitled to Attorneys' Fees ................................................................... 12

IV.   CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Board of Trustees of Cal. Metal Trades v. Pitchometer Propeller*,
  1997 WL 797922 (N.D. Cal. 1997) .................................................................................. 9

*Brookfield Communications, Inc. v. West Coast Entm't Corp.*,
  174 F.3d 1036 (9th Cir.1999) .................................................................................... 5, 6

*Century 21 Real Estate Corp. v. Sandlin*,
  846 F.2d 1175 (9th Cir. 1988) ................................................................................. 7, 11

*Deckers Outdoor Corp. v. Ozwear Connection Pty, Ltd.*,
  2014 U.S. Dist. LEXIS 132169 (C.D. Cal. Sept. 18, 2014) ........................................... 7

*Drexel Enterprises, Inc. v. Hermitage Cabinet Shop, Inc.*,
  266 F. Supp. 532 (N.D. Ga. 1967) ................................................................................ 8

*Earthquake Sound Corp. v. Bumper Indus.*,
  352 F.3d 1210 (9th Cir. 2003) ..................................................................................... 12

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986) ........................................................... 4, 5, 6, 9, 10, 11

*Geddes v. United Financial Group*,
  559 F.2d 557 (9th Cir. 1977) ................................................................................... 4, 10

*gen., AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ....................................................................... 1, 4, 6, 8, 9

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000) ..................................................................................7, 8

*Johnson v. Connolly*,
  2007 U.S. Dist. LEXIS 31721 (N.D. Cal. Apr. 18, 2007) ........................................... 12

*Kingvision Pay-Per-View, Ltd. v. Rivers*,
  2000 WL 356378 (N.D.Cal. 2000) ................................................................................ 4

*Lau Ah Yew v. Dulles*,
  236 F.2d 415 (9th Cir. 1956) ......................................................................................... 4

*Lindy Pen Co. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir., 1993) .................................................................................... 12

*Official Airline Guides v. Goss*,
    6 F.3d 1385 (9th Cir. 1993) .................................................................................................. 9

*PepsiCo, Inc. v. California Security Cans*,
    238 F. Supp. 2d 1172 (C.D. Cal. 2002) ................................................................................ 11

*Philip Morris U.S.A. v. Castworld Products*,
    219 F.R.D. 494 (C.D. Cal. Dec. 31, 2003) .............................................................. 10, 11, 12

*Taylor Made Golf Co. v. Carsten Sports*,
    175 F.R.D. 658 (S.D. Cal. 1997) ......................................................................................... 12

*Televideo Systems, Inc. v. Heidenthal*,
    826 F.2d 915 (9th Cir. 1987) ................................................................................................ 4

**Statutes**

15 U.S.C. § 1114 ........................................................................................................................ 5, 11

15 U.S.C. § 1114(a)(1) ..................................................................................................................... 6

15 U.S.C. § 1116(a) ....................................................................................................................... 11

15 U.S.C. § 1117(a) ....................................................................................................................... 12

15 U.S.C. § 1125 .............................................................................................................................. 5

15 U.S.C. § 1125 ............................................................................................................................ 11

15 U.S.C. § 1125(c)(5) ................................................................................................................... 12

**Rules**

Fed. R. Civ. Proc. 55 ........................................................................................................................ 1

Fed. R. Civ. Proc. 55(b) ................................................................................................................... 4

Fed. R. Civ. Proc. 55(b)(2) .............................................................................................................. 4

**Other Authorities**

https://renovahomeimprovements.com ..................................................................................... 3, 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On August 10, 2022, Plaintiff Renova Energy Corp. ("Plaintiff") filed a Complaint in the above-entitled matter against Defendants Salvador Cuevas, Renova Home Improvements, Renova Home Energy Solutions, Inc., Renova Energy Efficiency, Inc., and Renova Enterprises (collectively "Defendants") for trademark infringement and related claims regarding the use and continued use in commerce of Plaintiff's trademarks. (Doc. No. 4.) On June 7, 2023, the Clerk of this Court entered default against Defendants after Defendants failed to file a responsive pleading to the Complaint. (Doc. No. 25.) On October 17, 2023, the Court provided Plaintiff an opportunity to file an amended motion for default judgment to address the *Sleekcraft* factors and provide evidence in support of Plaintiff's request for attorneys' fees. (Doc. No. 30.) Plaintiff hereby submits its amended motion for default judgment. Plaintiff has satisfied the requirements of Fed. R. Civ. Proc. 55. Accordingly, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Default Judgment against Defendants.

## II. STATEMENT OF FACTS

### A. Plaintiff's Family of Trademarks and Logos

Plaintiff was founded in 2006 and is a leading solar installation company with over 250 employees. (Doc. No. 4, ¶ 10.) Plaintiff is a national-calibar solar and battery installation company and the first company in the country to be accredited by the North American Board of Certified Energy Practitioners. (Doc. No. 4, ¶ 12.)

Plaintiff is the owner of the federally registered mark RENOVA, U.S. Reg. No. 4955575 ("the '575 Registration"), which was registered May 10, 2016. (*See* Request for Judicial Notice ("RJN"), Ex. A; Doc. No. 4, ¶ 13.) The '575 Registration covers the following goods and services:

///

Class 35: Energy usage management services; Conducting energy audits of commercial and institutional facilities for the purpose of improving energy efficiency; Home energy assessment services for the purpose of determining energy efficiency or usage management; Promoting public awareness about energy conservation and renewable energy sources; Project management services for others for business purposes for the analysis and implementation of projects in the field of renewable energy.

Class 37: Installation, maintenance, and repair of renewable energy generation equipment; Home energy assessment services for the purpose of determining home improvements needed to improve energy use and efficiency; Construction project management services in the field of construction of renewable energy generation equipment.

Class 41: Educational services, namely, providing classes, courses, seminars, and on-site and field training concerning solar energy principles, practices, technologies, and installation of solar and renewable energy sources.

Class 42: Technical consulting services provided to businesses and local governments in the field of the development of solar and renewable energy resources.

Plaintiff is the owner of the federally registered mark renova, U.S. Reg. No. 4166527 ("the '527 Registration"), which was registered July 3, 2012. (*See* RJN, Ex. B; Doc. No. 4, ¶ 13.) The '527 Registration covers the following goods and services:

Class 37: Installation of solar photovoltaic equipment, excluding computer repair services.

Class 41: Educational services, namely, providing classes, courses, seminars, and on-site and field training regarding solar photovoltaic principles, practices, and technologies.

///

Plaintiff has been using the '575 Registration and the '527 Registration in U.S. commerce in connection with the installation, maintenance, and repair of renewable energy generation equipment, including solar photovoltaic equipment, from at least as early as November 3, 2007. (*See* RJN, Exs. A and B.) The '575 Registration and the '527 Registration are valid and subsisting and are incontestable. Plaintiff has invested significantly in advertising and marketing, and has acquired significant fame in its name, RENOVA. The RENOVA name and reputation are well known to consumers, and Plaintiff enjoys stellar ratings on Yelp! and SolarReviews. (*See* Declaration of Marty B. Ready ("Ready Decl."), ¶ 2; Ex. 1; Doc. No. 4, ¶ 19.)

**B. <u>Defendants' Infringing Conduct and Failure to Litigate</u>**

On August 4, 2016, Defendant Salvador Cuevas incorporated Defendant Renova Home Improvements. (*See* RJN, Ex. C.) Defendant Renova Home Improvements and its principal, Defendant Salvador Cuevas, operate an "Air conditioning, Window installation, Roofing, and Solar" company and maintain a website promoting its services at https://renovahomeimprovements.com. (Ready Decl., ¶ 3, Ex. 2; Doc. No. 4, ¶ 20.) Defendant Renova Home Improvements and its principal, Defendant Salvador Cuevas, advertise and market its services on social media platforms including Facebook, Instagram, Twitter, and Yelp!. (Ready Decl., ¶ 4, Ex. 3.)

On July 5, 2016, Defendant Salvador Cuevas incorporated Defendant Renova Enterprises. (*See* RJN, Ex. D.) Defendant Renova Enterprises has the same corporate address as Defendant Renova Home Improvements. (Compare RJN, Exs. C & D.) Defendant Renova Enterprises, however, does not have an online presence and is currently suspended by the Franchise Tax Board and the California Secretary of State. (Ready Decl., ¶ 5.)

Defendants' tradenames and domain names improperly use, and are identical to, Plaintiff's '575 and '527 Registrations. In addition, Defendants' operate in the same marketing channels via social media and the web as well as offer the same

goods and services under Plaintiff's marks, i.e. goods and services related to the solar industry including maintenance and installation. As a result, the public is likely to be confused as to the source of Defendants' goods and services due to the similarity to Plaintiff's marks. *See gen., AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 349 (9th Cir. 1979).

Defendants were properly served with the Summons and Complaint on April 28, 2023. (Doc. No. 22.) Defendants have failed to file a responsive pleading or otherwise make an appearance in this case, and consequently the Clerk of this Court entered default against them on June 7, 2023. (Doc. No. 25.)

## III. LEGAL ARGUMENT

Pursuant to FRCP Rule 55(b), a default judgment may be entered by the clerk as well as by the court. FRCP 55(b)(2) governs applications to the Court for a judgment by default. *Lau Ah Yew v. Dulles*, 236 F.2d 415 (9th Cir. 1956).

In the Ninth Circuit, a district court may consider the following factors in exercising its discretion to award a default judgment: (1) the possibility of prejudice to the Plaintiffs, (2) the merits of Plaintiffs' substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In applying this discretionary standard, the factual allegations contained in the Plaintiffs' complaint will be taken as true, except for those relating to the amount of damages. *Geddes v. United Financial Group*, 559 F.2d 557 (9th Cir. 1977); *Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Kingvision Pay-Per-View, Ltd. v. Rivers*, 2000 WL 356378, *1 (N.D.Cal. 2000).

///

///

### A. Possibility of Prejudice to Plaintiff

Plaintiff would be extremely prejudiced if default judgment was not granted against the Defendants. Through the use and continued use of Plaintiff's trademarks, Defendants have injured Plaintiff's reputation in the solar installation marketplace. Plaintiff has suffered from the loss of goodwill and reputation each time Defendants offer and market their services to the public. Because Defendants have completely ignored this lawsuit, it is likely they have continued and will continue their infringing activities, causing even further injury to Plaintiff. As such, if default judgment is not granted, Plaintiff will be left with no recourse for its injuries to its reputation and business caused by Defendants' infringing activities as well as for their efforts in litigating this case. This is prejudicial to Plaintiff, and as such, the first *Eitel* factor supports granting Plaintiff's motion for entry of default judgment.

### B. Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

With respect to the merits of Plaintiff's substantive claims (the second *Eitel* factor) and the sufficiency of the complaint (the third *Eitel* factor), Plaintiff has set forth a well-pleaded Complaint, and has listed all the essential facts and elements as to each of its causes of action against Defendants, including causes of action for Federal Trademark Infringement under 15 U.S.C. § 1114 and False Designation of Origin under 15 U.S.C. § 1125 of the Lanham Act. The essential elements of these two federal claims are identical. *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047 n. 8 (9th Cir.1999) (noting that infringement and false designation of origin claims are often identical, except that false designation of origin claims protect both registered and unregistered trademarks and can protect a wider range of practices, such as false advertising).

To prevail on its claims under the Lanham Act, Plaintiff must prove that, without its consent, Defendants used in commerce a reproduction, copy, counterfeit or colorable imitation of Plaintiff's registered trademark in connection with the sale

or advertising of any goods or services, and that such use is likely to cause confusion, mistake, or deceive customers. 15 U.S.C. §1114(a)(1); *Brookfield Communications v. West Coast Entertainment*, 174 F.3d 1036, 1046 (9th Cir. 1999).

Here, Plaintiff alleges all the facts necessary to establish trademark infringement by Defendants. Plaintiff owns its federally registered trademarks. (Doc. No. 4, ¶¶ 13, 15.) Each of the Defendants has used Plaintiff's marks or imitations, or variations of them without authorization. (Doc. No. 4, ¶¶ 17, 20-29.) Further, Defendants' use of Plaintiff's marks creates consumer confusion, including confusion as to Plaintiff's "affiliation, connection, or association" of Defendants' goods or services. (Doc. No. 4, ¶¶ 25.)

As such, Plaintiff properly alleged the necessary elements for a cause of action for trademark infringement in violation of the Lanham Act. The Complaint identifies Plaintiff's ownership of and exclusive rights to use the incontestable and registered marks. (Doc. No. 4, ¶ 13, 15) Defendants used the marks in commerce, in connection with the marketing and advertising of services bearing Plaintiff's marks without Plaintiff's consent. (Doc. No. 4, ¶ 20-29) In addition, Plaintiff's Complaint alleges that Defendants' use of the Plaintiff's marks is likely to cause confusion or mistake or to deceive customers and has thereby caused damage to Plaintiff. (Doc. No. 4, ¶¶ 24-29) Accordingly, because Plaintiff has established a likelihood of confusion, as discussed in more detail below, the second and third *Eitel* factors favor entry of default judgment against Defendants.

### 1. Likelihood of Confusion

The Ninth Circuit employs an eight factor test to determine whether a likelihood of confusion exists: (1) the strength of the mark; (2) the proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the degree of care customers are likely to exercise in purchasing the goods; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion into other markets. *AMF, Inc. v. Sleekcraft*

*Boats,* 599 F.2d 341, 348-349 (9th Cir. Cal. 1979). "When infringement is alleged to have occurred via a website, the three most important factors are the similarity of the marks, the proximity (or relatedness) of the goods or services, and the simultaneous use of the Web as a marketing channel." *Deckers Outdoor Corp. v. Ozwear Connection Pty, Ltd.,* 2014 U.S. Dist. LEXIS 132169, *15 (C.D. Cal. Sept. 18, 2014) *citing GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 (9th Cir. 2000). "Neither actual confusion nor intent is necessary to a finding of *likelihood* of confusion." *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1178 (9th Cir. 1988) (emphasis in original).

### a. *Strength of the Marks (Factor 1)*

Plaintiff's '575 and '527 Registrations have been in use in commerce for over sixteen (16) years. Plaintiff's '575 and '527 Registrations are well-known throughout the United States. (Doc. No. 4, ¶¶ 10, 12). While the weight given this factor is less than factors 2, 3, and 5, Plaintiff's expansion into other states and the number of years used in commerce are highly suggestive of a strong mark.

### b. *Relatedness of the Goods/Services (Factor 2)*

Defendants use Plaintiff's '575 and '527 Registrations in connection with advertising the exact services (goods and services related to the solar industry including maintenance and installation) that Plaintiff offers. (*See* Ready Decl., ¶¶ 3, 4.) Defendants' continued use of Plaintiff's '575 and '527 Registrations demonstrate a clear intention to harm the Plaintiff's business, goodwill and reputation by associating the Plaintiff's Registrations with the content posted on Defendants' websites and social media accounts. However, even if Defendants utilized Plaintiff's '575 and '527 Registrations in connection with goods or services unrelated to those of Plaintiff, Defendants would still be creating a likelihood of confusion between its websites and Plaintiff's '575 and '527 Registrations. *GoTo.com,* 202 F.3d at 1207 ("the use of remarkably similar trademarks on different websites creates a likelihood of confusion amongst web users" even in cases where the goods/services are not

identical).

### c. *Similarity of the Marks (Factor 3)*

The marks, tradenames, and domain names used by Defendants are identical to, and incorporate the very mark covered by, Plaintiff's '575 and '527 Registrations, i.e. RENOVA. There is no dispute as to this *Sleekcraft* factor.

### d. *Evidence of Actual Confusion (Factor 4)*

Actual confusion is inevitable insofar as Defendants are using Plaintiff's '575 and '527 Registrations in the same marketing channels and for the same goods and services covered by Plaintiff's Registrations. Although Plaintiff has not provided evidence of actual confusion, failure to do so is not fatal to its motion and carries less weight when infringement is via a website. *See GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 (9th Cir. 2000); *Drexel Enterprises, Inc. v. Hermitage Cabinet Shop, Inc.,* 266 F. Supp. 532, 537 (N.D. Ga. 1967) (proving actual confusion is difficult, and as a result, the difficulty in producing such evidence is not dispositive).

### e. *Marketing Channels Used (Factor 5)*

Plaintiff and Defendants are simultaneously using the Internet as the distribution channel in which the marks are displayed. (Ready Decl., ¶¶ 3, 4.) Defendants use the Internet to disseminate information on its website regarding solar installation and maintentance and other social media accounts. (Ready Decl., ¶¶ 3, 4.)

### f. *Degree of Purchaser Care (Factor 6)*

Defendants' use of marks identical to Plaintiff's '575 and '527 Registrations present the obvious risk that consumers will be misled that the services promoted, and offered, by Defendants are affiliated with Plaintiff.

### g. *Defendants' Intent in Selecting the Mark (Factor 7)*

Defendants' intent in selecting the infringing marks is unclear. Defendants, however, have known about Plaintiff's '575 and '527 Registrations since before the

filing of the instant complaint and yet continue to use the infringing marks in commerce. "When an alleged infringer knowingly adopts a mark similar to another's courts will presume an intent to deceive the public." *Official Airline Guides v. Goss,* 6 F.3d 1385, 1394 (9th Cir. 1993).

### h. *Likelihood of Expansion into Other Markets (Factor 8)*

This factor is not particularly relevant to the instant case but does favor Plaintiff. Plaintiff is actively engaged in expansion and growth and Defendants offer the same goods and services covered by Plaintiff's '575 and '527 Registrations. (Ready Decl, ¶ 6, Ex. 4.) "When goods are closely related, any expansion is likely to result in direct competition." *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 354 (9th Cir. 1979). The potential of Plaintiff's expansion throughout California is strong.

**C. Sum of Money at Stake**

The fourth *Eitel* factor assesses the reasonableness of the potential award if a default judgment is entered against the Defendants. In making this assessment, the Court must take into account the amount of money at stake in relation to the seriousness of the Defendants' conduct. *Eitel,* 782 F.2d at 1471. If the sum of money at issue is reasonably proportionate to the harm caused by the Defendants' actions, properly documented, and contractually justified, then default judgment is warranted. *Board of Trustees of Cal. Metal Trades v. Pitchometer Propeller*, 1997 WL 797922, at *2 (N.D. Cal. 1997). Defendants have previously and are presently using Plaintiff's marks covered by the '575 and '527 Registrations in commerce in connection with the sale, offering for sale, and advertising of services marketed under the Renova Home Improvement tradename, and on information and belief, the tradenames Renova Home Energy Solutions, Inc.; Renova Energy Efficiency, Inc.; and Renova Enterprises. (Doc. No. 4, ¶ 24.) Defendants' use of Plaintiff's marks cause consumer confusion, mistake, and deception as to affiliation, connection, or association with Plaintiff. As result, Defendants' use causes confusion as to the origin, or falsely designates the origin, sponsorship or approval

of Defendants' services by Plaintiff thereby constituting false designation of origin and unfair competition. (Doc. No. 4, ¶ 25.) Defendants' actions have caused damage to Plaintiff's goodwill and will continue to cause damages to Plaintiff. Defendants continue to ignore this lawsuit by failing to plead or otherwise defend in this action. Due to Defendants' conduct, Plaintiff is entitled to damages and injunctive relief.

### D. Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor considers the possibility of dispute as to any material facts of the case. Because Defendants have not filed any response(s) to Plaintiff's Complaint, a dispute concerning material facts is unlikely. Further, as discussed above, Plaintiff has sufficiently alleged facts necessary to maintain its claims for relief under the Lanham Act. Since Defendants' have made no attempt to challenge the accuracy of the Complaint, no dispute of material fact exists that would preclude the Court from granting Plaintiff's motion for default judgment. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (upon default the complaint's factual allegations are taken as true). Consequently, there is no dispute regarding the material facts of the Complaint.

### E. Whether Default was Due to Excusable Neglect

The sixth *Eitel* factor contemplates the possibility that Defaulting Defendants' failure to respond or otherwise appear was the result of excusable neglect. The Court considers whether Defendants were put on adequate notice to apprise them of the pendency of the action brought against them. *Philip Morris U.S.A. v. Castworld Products*, 219 F.R.D. 494 (C.D. Cal. Dec. 31, 2003).

Here, Defendants were validly served the Complaint. (Doc. No. 22.) Moreover, counsel for Plaintiff has spoken directly with Defendant Cuevas on October 4, 2022 to discuss his failure to respond to the Complaint and recommended he obtain counsel to properly respond to the Complaint. (Ready Decl., ¶ 7, Ex. 5.) Further, counsel for Plaintiff spoke to Mr. Gerardo Hernandez who represents Mr. Cuevas in another proceeding and provided courtesy copies of the Complaint.

(Ready Decl., ¶ 8, Ex. 6.) Even in light of these discussions, Defendants still failed to file a response to the Complaint even after service of summons and complaint was properly effectuated. (Doc. No. 22.) Thus, there cannot be a finding of excusable neglect in light of Defendants' failure to respond timely to the Complaint.

### F. Strong Policy Underlying the Federal Rules of Civil Procedure

Under the final *Eitel* factor, the Court must consider the strong policy of the federal courts in favoring decisions on the merits. However, this policy is not dispositive; rather, the Court still has great latitude in exercising its discretion with respect to the relative weight of the remaining *Eitel* factors. *PepsiCo, Inc. v. California Security Cans,* 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Moreover, the "defendant's failure to answer the plaintiff's complaint makes a decision on the merits of a case impractical, if not impossible." *Id*. As a consequence, the policy of favoring decisions on the merits does not necessarily preclude a court from granting a default judgment when the defendant fails to respond. Here, Defendants have refused to participate in the proceedings brought against them, despite adequate notice and opportunity to do so. Thus, default judgement is appropriate despite the strong policy of the federal courts in favoring decisions on the merits.

### G. Plaintiff is Entitled to Injunctive Relief Pursuant to 15 U.S.C. §§ 1114 and 1125

Under the Lanham Act, the District Court may grant an injunction "according to principles of equity" to remedy violations of a trademark owner's rights under §§ 1114 and 1125, and to prevent the recurrence of such violations. 15 U.S.C. §1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). Furthermore, injunctive relief is available in the default judgment setting. *Castworld Products*, 219 F.R.D. at 502.

///

Here, Plaintiff's Complaint specifically alleges that Defendants' actions causes it irreparable harm and, unless enjoined from using Plaintiff' marks, will continue to do so. (Doc. No. 4, ¶¶ 33, 34, 47-50.) Considering that Defendants are aware of the serious claims brought against them and have chosen not to respond, the Court should find that the proposed injunctive relief is appropriate and failure to grant the injunction would expose Plaintiff to the risk of continuing irreparable harm.

Specifically, Plaintiff seeks an order enjoining Defendants from using Plaintiff's '575 and '527 Registrations.

### H. Plaintiff is Entitled to Costs

In addition to injunctive relief, under the Lanham Act, Plaintiff is also entitled to its costs. 15 U.S.C. §1117(a); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir., 1993). Plaintiff seeks an award of costs in the amount of $2,821.67. (*See* Ready Decl., ¶ 13.)

### I. Plaintiff is Entitled to Attorneys' Fees

Under 15 U.S.C. §§ 1117(a) and 1125(c)(5), the District Court in exceptional trademark infringement and dilution cases may award reasonable attorney fees and costs to the prevailing party. A trademark case is exceptional where the defendant acted maliciously, fraudulently, deliberately, or willfully. *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir. 2003). On a motion for default judgment, allegations of willfulness are deemed true and, further, a trademark defendant's failure to appear alone warrants a finding that the case is "exceptional" for the purpose of determining entitlement to attorneys' fees. *See, e.g., Philip Morris USA, Inc. v. Castworld Prods.*, 219 F.R.D. 494, 502 (C.D. Cal. 2003); *Taylor Made Golf Co. v. Carsten Sports*, 175 F.R.D. 658, 663 (S.D. Cal. 1997); *Johnson v. Connolly*, 2007 U.S. Dist. LEXIS 31721 at *8 (N.D. Cal. Apr. 18, 2007).

Here, Defendants failure to respond to the Complaint and their continued use and willful acts of infringement warrants a finding that the case is exceptional entitling Plaintiff to its reasonable attorney's fees. (Complaint, ¶ 29.) Plaintiff seeks

an award of its attorney fees in the amount of $16,236.00. (*See* Ready Decl., ¶ 14.)

## IV. CONCLUSION

Based upon the foregoing, Plaintiff respectfully request that this Court enter default judgment as to Defendants, to be jointly and severally liable, in addition to the issuance of a Permanent Injunction against Defendants. Plaintiff also requests an award of costs of this action and a finding that this case is exceptional entitling Plaintiff to its reasonable attorney's fees. Plaintiff requests an award of costs and fees in the total amount of $19,057.67.

Dated: November 13, 2023

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: */s/ Marty B. Ready*
Marty B. Ready, Esq.
David J. Aveni, Esq.
Attorneys for Plaintiff,
RENOVA ENERGY CORP.

# CERTIFICATE OF SERVICE

I, the undersigned, am employed in the county of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 401 West A Street, Suite 1900, San Diego, California, 92101.

On November 13, 2023, I caused to be served the following document(s):

**AMENDED MOTION FOR ENTRY OF DEFAULT JUDGMENT; FED. R. CIV. PROC. 55(B)**

on the following parties in this action:

Salvador Cuevas
4991 E. McKinley Avenue, Suite 118
Fresno, CA 93727
Email:
salcuevas.renova@gmail.com
scuevas.renova@gmail.com
ghernandez@littler.com
leticias.renova@gmail.com;
invoices.renova@gmail.com

by the following method of service:

☒ **ELECTRONIC MAIL** - The document(s) were transmitted by electronic mail from Irene.gonzales@wilsonelser.com to the electronic mail addresses listed herein. Said transmission was sent without error.

☒ **BY MAIL** - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Diego, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on November 13, 2023, at San Diego, California.

_____
Irene Gonzales

14
MOTION FOR ENTRY OF DEFAULT JUDGMENT

289444115v.1